**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

ESTATE OF TYRESE WEST,  )
Deceased, by MONIQUE WEST and  )
DWIGHT PERSON, as  )
Special Administrators,  )
  )    Case No. 19-CV-1843
       Plaintiffs,  )
  )    Judge Brett Ludwig
    v.  )
  )
INV. ERIC GIESE and  )
VILLAGE OF MT. PLEASANT,  )
A Municipal Corporation,  )
  )
       Defendants.  )

## PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COMES, the Plaintiff, Estate of Tyrese West, through its administrators, Monique West and Dwight Person, by and through their attorneys, to submit this Brief in Opposition to Defendants Motion for Summary Judgment.

## STATEMENT OF FACTS[1]

On the summer night of June 14, 2019, Tyrese West ("Tyrese") was hanging out with his friends late into the evening. While out, Tyrese, 18 years old, was riding his bicycle. (DPFF ¶11). At some point during the early hours of June 15, 2019, Tyrese left his friends and started traveling home. (DPFF ¶11, ¶20). Tyrese was biking northbound on Highway 32 when Sgt. Eric Giese ("Giese"), patrolling in his squad car, observed him and decided to pull him over for operating the bicycle without a light on it. (DPFF ¶11, ¶20). Giese pulled up alongside Tyrese's

---

[1] In this section, Plaintiff cites to both Defendants' Proposed Findings of Fact ("DPFF") and Plaintiff's Statement of Additional Facts ("PSOAF").

1

bike, and yelled at him to stop three times, but Tyrese—a young, black teenager—began to pedal faster. (DPFF ¶24).

Then, Giese maneuvered up in front of Tyrese in an attempt to physically block his path. (DPFF ¶27). Doing so prompted Tyrese to abandon his bike and start running westbound on 25th Street. (DPFF ¶27, ¶31). Giese exited his vehicle and started pursuing Tyrese, during which time he drew his Taser and handheld radio. (DPFF ¶28, ¶38, ¶39). Tyrese was headed toward a chain-link fence that lined an industrial property along Sheridan Road. (DPFF ¶31, ¶32).

During the foot pursuit, Giese deployed his Taser at Tyrese but missed. (DPFF ¶38). Then, Giese dropped his Taser and immediately unholstered his firearm, as he closed the distance between himself and Tyrese. (DPFF ¶41, ¶46) (PSOAF ¶13). Nearing the chain-link fence, Tyrese stumbled, at which point he underhandedly tossed an object to his right. (DPFF ¶47). Giese heard a metallic clink along the fence, and then saw a gun land on the ground adjacent to the fence. (DPFF ¶48). Up until this point, Giese had not observed Tyrese handle or have possession of a gun. (DPFF ¶48) (PSOAF ¶7).

Ultimately losing his balance, Tyrese fell, anterior side down, onto the ground nearly parallel to the fence. (DPFF ¶53). Tyrese landed on the ground in a "push-up-like" position when Giese caught up to him and came to straddle Tyrese while standing over him. (DPFF ¶55, ¶58). In doing so, Giese stepped on Tyrese's left hand, pressing down with approximately 120 pounds of his body weight. (DPFF ¶55, ¶57) (PSOAF ¶16). While Giese claims that the firearm was only, at most, three inches from Tyrese's left hand during this interaction, the forensic evidence contradicts this account. (DPFF ¶53) (PSOAF ¶22, ¶25). In the moments leading up to and during the shooting, Tyrese's hand was a minimum of 12 to 18 inches from the firearm when he

was on the ground. (PSOAF ¶22). As a result of Giese's conduct, Tyrese died from multiple gunshot wounds on June 15, 2019. (DPFF ¶86).

## STANDARD OF REVIEW

Summary judgment may only be granted when there exist no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. If after a review of the record, the court finds that a genuine issue of material fact exists, summary judgment is improper. *See Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000); *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999).

In ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014 (7th Cir. 2003); *see also, Alicea v. Thomas*, 815 F.3d 283, 286 (7th Cir. 2016) (finding that a material dispute exists as to whether the officers' actions violated clearly established law, and thus reversing summary judgment). Plaintiffs do not need to fully prove liability to avoid summary judgment. *Napier v. Town of Windham*, 187 F.3d 177, 184 (1st Cir. 1999). Rather, plaintiffs only need to demonstrate that a reasonable jury could later find that they have proven liability. *Id.* The Seventh Circuit has repeatedly cautioned courts against granting summary judgment in excessive force cases, particularly where the victim has been killed by the defendant-officer. *See, e.g., Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

In their Motion, Defendants implicitly attack Dr. Bauer's expert qualifications by citing to a case where Bauer's opinions were disqualified and disregarded by an Ohio federal court. But that case is not informative or instructive to the present one for several reasons. First, that court notes that Bauer's opinion on whether the decedent was holding a gun at the time he was

Case 2:19-cv-01843-BHL   Filed 04/01/22   Page 3 of 22   Document 62

shot is unsupported by his method and the facts in the record. In *Jordan*, multiple officers shot at the decedent for a total of 11 times, and there was no evidence to indicate the sequence of the gunshots. Other than that, the court does not describe the specific shortcomings of Bauer's opinions or methods. Second, Bauer's report and conclusions are explained in detail in his deposition testimony. Without comparing Bauer's report and deposition testimony in *Jordan* to the present case, it cannot be assumed that they are similarly deficient.

## ARGUMENT

### I. Officer Giese's Use of Deadly Force was Unreasonable Because There was No Imminent Danger Resulting from a Threat of Death or Serious Bodily Harm.

As the Defendants accurately indicated, the extent of the force used must be weighed against the need for administering it. *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985). Here, the facts demonstrate that there was simply no need to use deadly force, as Tyrese was not in possession of a firearm nor did he threaten Giese, verbally or otherwise.

The defendant's reliance on *Sanzone v. Gray*, 884 F.3d 736, 740 (7th Cir. 2018), articulates the reasonableness of an officer to use deadly force upon a suspect's threatening an officer with a weapon. The defendants further highlight the rationale to further justify the reasonableness of deadly force when an officer has probable cause to believe that the "armed suspect" poses a threat of serious physical harm or threatens the same. *Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020).

The issue here is a simple one. In essence, there are two components to Defendants' rationale. First, a suspect must be in actual possession of a weapon; and secondly, the undisputed facts must demonstrate that the suspect threatened the officer. In the present case, both facts are vehemently disputed, as the record reveals.

4

Despite there being no disputed facts that Tyrese never actually ever had the gun in his hand at the time Officer Giese used deadly force, the defendants artfully intend to establish possession of a weapon by West, by asserting the alleged proximity of the firearm to Tyrese. Such conclusion is erroneous for several reasons. First, the Defendants have failed to establish that Tyrese even had knowledge of the whereabouts of the alleged gun. There have been no facts that establish a verbal threat by Tyrese to use a gun against Officer Giese. Such conclusions are founded on mere speculation. Further, the reasonableness of such conclusion is further undermined by the fact that no bullets were within the firearm, making the alleged Tyrese intent to threaten or cause harm on with a gun even more unlikely.

Finally, Tyrese's fingerprints were never established on the firearm. This tends to further undercut the reliance that Tyrese ever possessed a gun, and allows the Plaintiff to put at issue before a reasonable jury the veracity of such claims.

In sum, there is simply arguable facts as to whether possession of a firearm existed based both off the distance or proximity of the alleged firearm to Tyrese and on the reasonable dispute that Tyrese ever possessed a firearm based off of the forensic evidence.

Moreover, the second prong of a valid threat being asserted by Tyrese is further disputed. While it is true that a suspect's possession of a weapon makes using force more reasonable, the suspect must actually threaten someone with the weapon. *See Bell v. Irwin*, 321 F.3d 637, 639 (7th Cir. 2003) ("Police may use ... deadly force if the suspect poses a threat of serious physical harm, either to the officer or to others. [I]f the suspect threatens the officer with a weapon that risk has been established.") (citation and quotations omitted*). J.M. & Estate of Hamilton v. City of Milwaukee & Christopher E. Manney*, 249 F. Supp. 3d 920, 943 (E.D. Wis. 2017)

### A. *Tyrese was not armed, in possession, or within reach of a firearm.*

5

Defendant's rely on *Henning v. O'Leary*, 477 F.3d 492, 296 (7th Cir. 2007) to bolster their argument that Tyrese was a threat to Giese. However, *Henning* is distinguishable in several, significant ways from the facts of this case. In *Henning*, the proximity of the gun was at issue. Specifically, at the time the officers used deadly force the officers believed that the suspect had his hand "on or near the gun." As a contrast, the gun in the present case was not within Tyrese's reach, when viewing the facts most favorably to Plaintiff. Despite Giese's account that the gun was approximately a few inches away from Tyrese's left hand, the physical evidence, common sense, and Dr. Bauer's conclusions all counter his account.

This is evident not only by photograph of Tyrese in the firearm, but testimony from the first arriving Officer Cody Smith, who further opined that his estimation would be that the firearm was about one foot away from Tyrese. In his deposition, Officer Smith further admitted that Tyrese would likely have to reach over his body to grab the firearm. Accordingly, a reasonable trier of fact could conclude that the distance being more than one foot away from Tyrese, was out of reach, and thus completely unreasonable for an officer's belief that Tyrese hands were "on or near it" as in the *Henning* case.

Next, a reasonable jury could further determine that the officer's actions were unreasonable, and thus excessive, on the basis that Officer Giese never stated he "knew" where the placement of the gun was. Without an officer's knowledge of where the gun actually was positioned in relation to Tyrese, a reasonable jury could determine there was not a reasonable fear of an imminent threat.

Third, it is alleged that Tyrese threw the gun which would reasonably indicate surrendering of the weapon. The firearm also had no bullets, which would further lead a

6

reasonable jury to negate the plausibility that Tyrese would actually reach for a gun with no bullets under the circumstances.

Finally, the defendants list a range of cases outside of the circuit that are further distinguishable from the facts of the instant case. For example, *Parks v. Pomeroy*, 387 F. 3d 949, 957-58 (8th Cir. 2004) where an officer was granted immunity where a gun was "just inches" from the suspect's hand after a "hostile and intense" physical struggle is completely devoid of analogous facts in the instant case.

First, the gun was not "just inches" away from Tyrese, and more reasonably estimated to be at least a foot away from Tyrese, as previously discussed. Secondly, there was no "hostile and intense" physical struggle as in *Parks*. In *Parks,* the plaintiff at one point reached for the officer's gun and subsequently shoved the officer on the floor and into a closet. At one point in the struggle, the officer hit the plaintiff over the head with his "asp." After being shoved in the closet, the officer fired his gun at the plaintiff and wounded him. The entire encounter between the officer and the plaintiff lasted less than three minutes. *See id.* at 990-91; *Parks*, 387 F.3d at 957.

Here, Tyrese never reached for the officer's gun, nor did he kick, hit, spit, or otherwise attempt to assault Giese. Thus, there are no facts in the present case that would allow a reasonable officer to infer that Tyrese had malicious "intent" or was a "threat."

The Seventh Circuit has maintained that shooting an unarmed and surrendering suspect who was not actively resisting in the moments before shooting and who posed a diminishing threat would violate clearly established law. Deadly force is warranted only when an immediate threat of serious harm to the officers is present. *Weinmann*, 787 F.3d at 448; *Marion v. City of*

7

*Corydon*, 559 F.3d 700, 705 (7th Cir. 2009); *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002); *Smith v. Finkley*, 20-1754, at *1 (7th Cir. Aug. 18, 2021).

Further, the mere presence of a weapon does not constitute a reasonable threat. Other circuits have opined that the mere fact an individual is armed, however, does not mean he or she has used the weapon, or threatened to use it, in any way. There is a material difference between the presence of a weapon, which produces a risk of violent force, and the actual or threatened use of such force. *United States v. King*, Civ. No. 16-501 MV/KK, at *21 (D.N.M. Dec. 1, 2016).

### B. Any purported belief of Officer Giese that Tyrese posed a threat of imminent danger of death or great bodily harm is utterly unreasonable.

First, though it has not been conceded that Tyrese had a firearm on his person at all, there have been no facts to suggest that Tyrese had actual knowledge of proximity of a firearm after alleging dispersing of such. Second, a reasonable jury could conclude that it is impossible to be "laser focused," as indicated on DPFOF ¶ 59, on both Tyrese's left hand and the firearm which appears to be at least 3 feet away from Tyrese negating any reasonability of an imminent threat.

Officer Giese's sole basis to determine the reasonableness of exercising deadly force was grounded on Tyrese's left hand "moving back and forth" (DPFOF ¶ 63), of which he alleges that he belief of Tyrese going for a gun. However, through his own testimony, Giese admits that Tyrese's hand was going "back and forth" struggling to free his hand from [Giese's] foot (DPFOF ¶ 68). By such admission, a reasonable jury could conclude that the pain and aggravation stemming from the body weight of Giese was the more reasonable conclusion as to the movement of Tyrese's hand.

Accordingly, a reasonable jury could conclude such movement was to not to grab a gun. Moreover, there are no facts in the record to support the assertion that Tyrese had knowledge of the proximity of the alleged gun. Instead, a jury could conclude that any movement of West's

8

left hand was simply a "natural reaction" to pain from Giese's boot being propounded on his hand making Giese's use of force unreasonable. Further, as discussed at length in the previous section, any allegation that there was a loose firearm "just inches away" from Tyrese and that Tyrese subsequently reached for it, is disputed.

What has been described in the recitation of Officer Giese's testimony, at best, is a "generalized fear" of what Tyrese could potentially do. Not at all grounded on a threat by Tyrese verbally or physically, and with no evidence at all to support that Tyrese even had knowledge of the alleged whereabouts of the firearm after it was allegedly dispersed. The fact finder could reasonably determine that Tyrese never possessed a firearm at the time deadly force was used, never made a threat a such point, making such use of force by Officer Giese completely unreasonable and excessive.

Other jurisdictions have similarly concluded that "the threat of death or seriously bodily injury must be imminent in the sense that it is ongoing at the time the firearm is possessed. Id. at 961-62. A "generalized" fear is not sufficient. *United States v. Hudson*, 414 F.3d 931, 933 (8th Cir. 2005)" *U.S. v. Hatten*, No. 8:09CR267, at *4 (D. Neb. May 4, 2010).

Even if the court found that the presence of a weapon itself, albeit more than one (1) foot away from the subject, qualified as "legal possession," other jurisdictions have ruled that "mere possession of a dangerous weapon was not enough. *See e.g., Jolly*, 502 N.W.2d at 181; *Reliford v. United States*, No. 11-20158, at *4 (E.D. Mich. Feb. 7, 2018).

Based on the record as viewed for the Plaintiff, a reasonable officer would not have believed Tyrese posed an imminent threat of serious harm or death because the gun was not in close proximity to him, nor did he ever regain possession or control of the gun after abandoning it. Additionally, given the disputed factual record, summary judgment is improper.

9

II.  **Defendant Giese is Not Entitled to Qualified Immunity for Killing Tyrese West.**

As of June 2019, the law was clearly established that it was unreasonable for Defendant Giese to use deadly force on Tyrese West when he was not posing an imminent threat of death or serious bodily harm to anyone, in the moments leading up to and during Officer Giese fatally shooting Tyrese. Alternatively, the record contains several disputed, material facts that bar a finding that Giese is protected by qualified immunity for fatally shooting Tyrese.

Police officers are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A claim that a police officer has used excessive force in the course of a seizure is analyzed under the Fourth Amendment. *Lester v. Chicago*, 830 F.2d 706, 712 (7th Cir. 1987).

An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of arrest, the officer used greater force than was reasonably necessary to effectuate the arrest. *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009).

If one view of the disputed facts could lead a jury to conclude that an officer violated a clearly established constitutional right, the officer may not seek qualified immunity based on an alternative, more advantageous, reading of those facts. *See Nettles-Bey v. Williams*, 819 F.3d 959, 961 (7th Cir. 2016).

A.  *The Law was Clearly Established That Shooting an Unarmed, Nonthreatening Individual is Unconstitutional.*

Evaluating a qualified immunity defense requires courts to consider two questions: (1) whether the facts, taken in the light most favorable to the nonmovant, depict a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013).

10

As this court has observed, the use of such force establishes a constitutional violation, and if the right violated was clearly established at the time of the officer's actions, then qualified immunity does not attach. *Pinkins v. City of Racine*, Case No. 19-cv-0368, March 30, 2022 at 6. The first inquiry can be answered in the affirmative because the Supreme Court determined that there is no question that apprehension by deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

However, the second inquiry requires a more full-scale discussion. Assessing whether the law is clearly established does not require locating a case directly on point. *Strand v. Minchuk*, 910 F.3d 909, 915 (7th Cir. 2018). The law is clearly established when various courts have agreed that certain conduct is a constitutional violation under similar factual circumstances as the case at hand. *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018). The Supreme Court has expressly permitted a robust "consensus of cases of persuasive authority" to clearly establish a constitutional violation. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

In the qualified immunity context, officials can still be on notice that their conduct violates established law even in novel factual circumstances. *Brown v. Blanchard*, 31 F. Supp. 3d 1003, 1006 (E.D. Wis. 2014) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). It is clearly established that an officer who shoots a suspect in an effort to protect himself cannot escape liability if the danger he faced was created by his own unreasonable conduct. *Id.*

The Court's *Garner* decision provides a framework for the present analysis of what constitutes "unreasonable force." The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. *Garner*, 471 U.S. at 11. In its opinion, the Court emphasized, "It is not better that all felony suspects die than that they

11

escape." *Id.* Where the suspect poses no immediate threat to the officer or others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. *Id.*

For purposes of the Fourth Amendment, the test is an objective one, and so, it does not matter if an officer subjectively believed that his life was in danger. *Weinmann v. McClone*, 787 F.3d 444, 449 (7th Cir. 2015). It would be objectively unreasonable for officers to open fire on a person who was not reaching for a weapon or otherwise acting in a threatening manner. *Helman v. Duhaime*, 742 F.3d 760, 763 (7th Cir. 2014) (citing *Graham v. Connor*, 490 U.S. 386 (1989)).

In their Motion, Defendants argue that Giese was not required to allow Tyrese to gain control over the loose firearm and point it directly at him before using deadly force. (Defs.' Mot. Summ. J. at 24.). Plaintiff agrees. However, Giese was required to refrain from using deadly force unless, or until, Tyrese became an imminent threat of death or serious bodily harm to someone.

In support of their position, Defendants cite to three Seventh Circuit cases: *Conley-Eaglebear v. Miller*, *Henning v. O'Leary*, and *Tom v. Voida*.[2] But each of these cases are significantly distinct from the present facts. In *Conley-Eaglebear*, the court found that the undisputed facts showed that the plaintiff drew a gun from his waistband and that the gun's barrel was moving in the officer's direction. 2017 U.S. App. LEXIS 27556, at *5-6. Thus, the circumstances of *Conley-Eaglebear* justify perceiving the plaintiff as an imminent threat, whereas the facts in the present record do not. Tyrese abandoned the gun during the pursuit, and never wielded it like the plaintiff in Conley did.

In *Henning*, the plaintiffs did not present any evidence that the officers' characterizations of the events at issue were disputed. 477 F.3d at 496. After attempting to gain compliance by the

---

[2] No. 16-3065, 2017 U.S. App. LEXIS 27556, at *5-6 (7th Cir. Sep. 26, 2017); 477 F.3d 492, 496 (7th Cir. 2007); 963 F.2d 952 (7th Cir. 1992).

decedent, the officers tried hand strikes, pepper spray, and baton blows to the torso and legs to get him subdued, but to no avail. *Id.* at 494. Then, one of the officers noticed his gun had fallen out of his holster and landed on the ground underneath the decedent. *Id.* During the physical struggle, the other office believed the barrel of the gun was facing him, and heard the decedent say, "Shoot me, you're going to have to shoot me." *Id.* at 495. Within moments, that officer drew his weapon and shot the decedent once. *Id.*

Unlike the decedent in *Henning*, Tyrese never made threatening verbal comments to Giese. And when viewing the facts in the light most favorable to Plaintiff, the firearm was not within inches of Tyrese during the physical interaction. Lastly, the officers in *Henning* had exhausted all other nonlethal means of force that they had at their disposal before using deadly force. Despite conceding that he could have used his baton to gain subdue Tyrese, Giese did not even attempt to utilize his baton.

In *Tom*, there was uncontested evidence in the record that the decedent was battering the officer when the officer fired the first gunshot, and then rushing at the officer when she fired a second time. Unlike here, Tyrese never battered or rushed Giese during their entire encounter.

In *Estate of Smith v. City of Milwaukee*, the court denied summary judgment for an officer who shot and killed an individual during a foot pursuit. 410 F. Supp. 3d 1066, 1076 (E.D. Wis. 2019).[3] While on patrol, the officer observed the decedent in a vehicle that he claimed was illegally parked. *Id.* at 1068-69. Thus, the officer parked his squad car alongside the decedent's vehicle and then the decedent exited the vehicle and began to run. *Id.* at 1069. The officer began to chase after the decedent, who possessed a handgun while he fled. *Id.* As he ran, the decedent lost his footing and began to fall in front of a chain link fence, dropping the gun. *Id.* As the

---

[3] The following described facts are either undisputed or, if disputed, interpreted in light most favorable to the plaintiff.

officer approached the decedent, he already had his firearm drawn and in the ready position. *Id.* After falling to the ground, the decedent got up, grabbed the dropped gun, and threw it over the fence. *Id.* Then, the officer fired his gun, and then a second later fired it again. *Id.* at 1070. However, the decedent's precise physical movements immediately before being shot were disputed. *Id.*

In its decision, the district court concluded that the officer was not entitled to qualified immunity's protection because shooting the decedent was objectively unreasonable under the plaintiff's version of events. *Id.* at 1072. Notably, the Wisconsin court held that as of 2016 (when the shooting occurred), "[o]nly a reckless officer would find reasonable the use of deadly force in this manner and under these circumstances." *Id.* at 1076. In its reasoning, the court explained that even accepting the officer's account that the decedent had reached toward the gun while looking back at the officer, this fact does not grant a police officer an irrebuttable or ironclad presumption that the decedent posed an imminent threat. *Id.* at 1073.

Our sister circuits consistently endorse this rule as well. S*ee, e.g., Perez v. Suszczynski*, 809 F.3d 1213, 1220 (11th Cir. 2016) ("[T]he mere presence of a gun or other weapon is not enough to warrant the exercise of deadly force and shield an officer from suit."); *George v. Morris*, 736 F.3d 829, 838-39 (9th Cir. 2013) (noting that the officers' use of deadly force would be objectively unreasonable if it were true that, although the individual held a gun, the gun was "trained on the ground" and he did not make a "furtive movement, harrowing gesture, or serious verbal threat" before being shot). Further, common sense reinforces these holdings as "[t]here is a material difference between the presence of a weapon, which produces a risk of violent force, and the actual or threatened use of such force." *United States v. Parnell*, 818 F.3d 974, 977 (9th

14

Cir. 2016). A court cannot extrapolate an implied threat to use a weapon from a person's mere possession of it. *Id.*

It is unreasonable for an officer to believe that a suspect poses a threat of serious physical harm, either to himself or to others, merely because that suspect possesses a firearm. *Hensley v. Price*, 876 F.3d 573, 577 (4th Cir. 2017). The law was clearly established long before the events of this case that a police officer could not use deadly force on a suspect who was attempting to surrender and presented no risk of ***imminent*** harm to others. *Garner*, 471 U.S. at 11 (emphasis added); *Helman*, 742 F.3d at 763; *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993); *see also, Evans v. Hansen*, No. 20-cv-860-bbc, 2022 U.S. Dist. LEXIS 43798, at *12 (W.D. Wis. Mar. 11, 2022). In addition to these courts, an Ohio federal court held that, as of 2003, a reasonable officer would have known that pursuing a fleeing suspect with their firearm drawn and a finger on the trigger violated the principles of *Garner*. *Leisure v. City of Cincinnati*, 267 F. Supp. 2d 848, 859 (S.D. Ohio 2003).

To overcome qualified immunity, Defendants claim that Plaintiff has to present a case where an officer uses deadly force following a physical struggle with a noncompliant, actively resistive, fleeing suspect who was attempting to gain control over a loose firearm. Defendants frame the circumstances at issue in a such a way that would require the court to interpret the record in Defendants' favor.

But when viewing the evidence in Plaintiff's favor, it is clear that Tyrese was not attempting to gain control over the firearm. Rather, Tyrese was attempting to dispose of the firearm, which is evidenced by the fact that he threw the gun in the opposite direction he was running and never regained possession of it. Defendants posit that the only thing that stopped Tyrese from reacquired control of the gun was Giese's boot stepping on his left hand. A closer

15

look at the record swiftly dismantles their assumption. Despite Tyrese having an opportunity to reach for the gun when Giese lifted his boot and pivoted away from him, Tyrese did not reach for it. In fact, Tyrese did not turn his head and look at the gun, nor did he lunge toward it.

Moreover, if the gun was actually only "one to three inches" from Tyrese during the physical struggle, any subsequent movement toward the gun would have caused Tyrese's final resting position to be on top of, or nearly touching, the gun. And based on the first responding officer's body-worn camera, scene photographs, and the following investigation, it is clear that Tyrese did not end up on top of or nearly touching the firearm.

The *Estate of Smith* case is eerily similar to the present facts. Like the officer in *Smith*, Officer Giese pursued a suspect on foot for an ordinance violation, which ended in him using deadly force on the "suspect." Also, like the decedent in *Smith*, Tyrese was disposing of a firearm during the pursuit and never pointed, wielded, or threatened Giese throughout their interaction. Officer Giese, as the officer in *Smith* did, unholstered his firearm before ever seeing Tyrese in possession of a weapon. Giese's decision to draw his firearm at this time in the pursuit exemplifies his unreasonableness from the outset. At that point in Giese's encounter with Tyrese, Tyrese had done nothing more than evade arrest by fleeing. Giese did not suspect that Tyrese was committing, or was about to commit, a dangerous felony. And the physical evidence, as explained by Dr. Bauer, demonstrates that Tyrese was not an imminent threat to Giese.

Specifically, the physical evidence reveals that Tyrese was significantly further from the gun than Giese claims he was and there was no physical evidence that Tyrese was ever reaching for the gun in the moments leading up to and when he was shot. Thus, Giese had no objectively reasonable justification to employ deadly force on Tyrese West.

16

Although Defendant likely had probable cause to arrest Tyrese after he attempted to conduct a field interview of Tyrese on June 15, 2019, probable cause to arrest does not necessitate deadly force. Simply observing a person with a gun does not sanction an officer's deadly force when that person has disarmed and is not exhibiting threatening behavior.

When interpreting the evidence most favorably to the nonmovant, the Estate of Tyrese West, the record demonstrates that Tyrese had thrown the gun he had been in possession of, and never regained possession of it after, Tyrese was more than 30 inches away from where the gun landed, and never physically or verbally threatened anyone. Therefore, Tyrese was not an imminent threat to Giese or anyone else at the time Giese shot him, and a reasonable officer would have known that discharging a firearm at Tyrese violated his constitutional rights.

**B. Alternatively, Summary Judgment is Improper Because the Qualified Immunity Assessment Turns on Several Disputed, Material Facts.**

Disposing a case on summary judgment based on qualified immunity is improper when the question of immunity turns on issues of disputed fact. *Estate of Palma v. Edwards*, 2001 U.S. Dist. LEXIS 24561 (N.D. Ill. Sep. 17, 2001). When the qualified immunity inquiry cannot be disentangled from disputed facts, the case cannot be resolved without a trial. *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). The existence of a factual dispute about the circumstances surrounding the officer's decision to fire at an individual prevents a ruling on qualified immunity at the summary judgment stage. *Weinmann*, 787 F.3d at 451.

Moreover, summary judgment is not appropriate in §1983 deadly force cases that turn on the officer's credibility when that credibility is genuinely in doubt. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016); *see also C.V. v. City of Anaheim*, 823 F.3d 1252, 1256 (9th Cir. 2016); *Wilson v. City of Des Moines*, 293 F.3d 447, 454 (8th Cir. 2002). To ensure fairness to a deceased plaintiff, given the impossibility of victim testimony to rebut the officers' account,

17

courts must scrutinize all the evidence to determine whether the officers' story is consistent with other known facts. *King v. Hendricks Cnty. comm'rs*, 954 F.3d 981, 985 (7th Cir. 2020); *Maravilla v. United States*, 60 F.3d 1230, 1233-34 (7th Cir. 1995).

In *Weinmann*, the Seventh Circuit affirmed the lower court's denial of qualified immunity to the officer. 787 F.3d at 451. In reaching its decision, the court relied on *Garner*, *Graham*, and a handful of decisions from its sister circuits. *Id.* at 450. The Seventh Circuit also noted that even if there were no other decisions sufficiently analogous for purposes of the "clearly established" analysis, the court would still be unable to hold that the officer was entitled to qualified immunity on the record. *Id.* at 451. That is because the "existence of a factual dispute about the circumstances surrounding [the officer's] decision to fire on [the plaintiff] precludes a ruling on qualified immunity at this point." *Id.*

In *King v. Taylor*, the appellate court found that a factual dispute existed as to whether the decedent had posed a threat of serious physical harm to the officer or others. 694 F.3d 650, 663 (6th Cir. 2012). The court concluded that deadly force was unreasonable against a suspect who had earlier threatened violence and was holding a gun, assuming the individual "did not point [the] gun towards the officers just before he was shot." *Id.* Individuals "have a right not to be shot unless they are perceived as posing a threat to officers or others." *King v. Taylor*, 694 F.3d 650, 664 (6th Cir. 2012). Genuine disputes of material fact preclude upholding the district court's entry of summary judgment on Taylor's defense of qualified immunity. *Id.*

Here, Defendant Giese's credibility is genuinely in doubt based on the forensic evidence and Dr. Bauer's expert report and opinions. Even the physical evidence—such as the distance between the gun and Tyrese—contradicts Giese's own version of events.

Because the parties contest multiple, material facts, the reasonableness of Defendants' use of deadly force cannot be decided as a matter of law.

III.   **Defendants Eric Giese and the Village of Mt. Pleasant are Not Entitled to Judgement on Plaintiff's Wrongful Death Claim.**

The two elements of wrongful death in Wisconsin are: (1) the wrongful or tortious conduct that renders the tortfeasor potentially liable; and (2) the party's death, which establishes the right of action. *Bradley v. Knutson*, 62 Wis.2d 432, 215 N.W.2d 369 (1974). Plaintiff has sufficiently pled these elements, and the record demonstrates that Giese wrongfully shot and killed Tyrese West. There is no dispute that Giese is the sole responsible party for Tyrese's death, and the preceding sections of this brief demonstrate why this conduct was wrongful.

However, Defendants argue that Giese is entitled to immunity for his actions in killing Tyrese. In Wisconsin, there are four recognized exceptions to governmental immunity. Immunity does not apply to the performance of (1) ministerial duties; (2) duties to address a known danger; (3) actions involving medical discretion; and (4) actions that are malicious, willful and intentional.

Defendants try to dismiss the fourth exception as being irrelevant because Plaintiff did not allege that Giese acted with "malice" in his shooting of Tyrese.  But "malice" is a synonym of "wanton."  Black's Law Dictionary (7th Ed. 1999). "Malice" connotes wrongful intention, without justification or excuse, to commit a wrongful act. *Id.* In addition, reckless disregard of the law or of a person's legal rights can also constitute malice. *Wilson v. City of Milwaukee*, 138 F. Supp. 2d 1126, 1127 (E.D. Wis. 2001).

In the context of the "wrongful or tortious conduct," the officer's actions may fall into the exception from qualified immunity promulgated in *Pearson*. 555 U.S. at 231. Whether the

19

officer's actions breached the parameters of excessive force doctrine will dictate the wrongfulness and thus, the satisfaction of the first element of Plaintiff's wrongful death claim.

The question of qualified immunity turns on two main issues: "whether the facts presented, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right; and second, whether the federal right at issue was clearly established at the time of the alleged violation." *Smith*, 10 F.4th at 737.

Here, factual disputes exist as to the reasonableness of the officer's actions *and* the series of events that led to Plaintiff's death. In *Smith*, the Seventh Circuit found that, even with body-cam footage of an alleged use of excessive force, there were material fact disputes: "The events here preceding and during the shooting remain subject to interpretation, including the level of threat Smith posed and how actively he was resisting. These questions are important to and inseparable from the qualified immunity decision." *Id.* at 748. Further, the Court found "[t]he existence of material factual disputes 'precludes a ruling on qualified immunity at this point.'" *Id.* at 750 (citing *Strand v. Minchuk*, 910 F.3d 909 (7th Cir. 2018).

In contrast to *Smith*, here, there is no body-cam footage. During the 82 seconds from the time that Giese first reported seeing a bicyclist until he fatally shot Tyrese, there are many factual considerations pertaining to the wrongfulness of the Sergeant's actions. The intertwining of factual disputes and the qualified immunity defense disqualifies Sgt. Giese, and in turn, Mount Pleasant's claims of qualified immunity here. The disputes include factual differences in the officer's suspicion of the commitment of a crime, the threat presented, including whether the suspect was armed, the active resistance of the suspect, and the duration and stress of the episode. *See Smith*, 10 F.4th at 738-739.

20

With respect to Defendants' Motion for Summary Judgment, Defendants claim that Giese's actions do not fit into any of the exceptions applied to Wisconsin's qualified immunity statute, Wis. Stat. § 893.80(4). As stated above, there are material issues of fact that apply to the fourth exception, "malicious, willful, or intentional conduct." While Defendants are correct in stating that "malice" is not an element of a wrongful death claim, they are incorrect to assume that there is no overlap between the two.

If "a reasonable jury could find from plaintiff's version of events that the officers' use of force against the plaintiff was not only negligent, but malicious, willful and intentional," then "defendants are not entitled to summary judgment." *Geboy v. Oneida Cnty.*, 19-cv-574-bbc (W.D. Wis. 2020). When, as there is here, there is evidence that, taken in the light most favorable to the non-moving party, a police officer used force that injured a plaintiff, and it was arguably a wrongful or tortious action, then summary judgement is not appropriate under the "malicious, willful, and intentional" exception to qualified immunity. *See Brown v. City of Milwaukee*, 288 F. Supp. 2d 962, 984 (E.D. Wis. 2003).

To review, summary judgment as to the claim of wrongful death is not appropriate in this situation. Under the light most favorable to Plaintiff, there are factual disputes that directly related to Giese's willfulness, maliciousness, and intent and thus, Defendants' motion for summary judgment should be denied.

## CONCLUSION

For all the foregoing reasons, Plaintiff, Estate of Tyrese West, through its co-administrators, Monique West and Dwight Person, respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment in its entirety, to allow this case to proceed to trial, and any other relief it deems appropriate.

21

Respectfully Submitted,


/s/ Gregory E. Kulis
One of Plaintiff's Attorneys

**Gregory E. Kulis**
**Gianna Gizzi**
**Gregory E. Kulis & Associates, Ltd.**
**30 N. LaSalle Street, Suite 2140**
**Chicago, IL 60602**
**p: (312) 580-1830 / f: (312) 580-1839**
**e: ggizzi@kulislawltd.com**
**e: gkulis@kulislawltd.com**

22